[Cite as *In re D.W.*, 2024-Ohio-5091.]

## COURT OF APPEALS OF OHIO

## EIGHTH APPELLATE DISTRICT
## COUNTY OF CUYAHOGA

IN RE D.W.                                          :

A Minor Child                                       :

                                                    :          No. 112655

                                                    :

---

### JOURNAL ENTRY AND OPINION

**JUDGMENT:** AFFIRMED
**RELEASED AND JOURNALIZED:** October 24, 2024

---

Civil Appeal from the Cuyahoga County Common Pleas Court
Juvenile Division
Case No. DL-19-115511

---

### *Appearances:*

Michael C. O'Malley, Cuyahoga County Prosecuting
Attorney, and Anthony T. Miranda and John T. Dowling,
Assistant Prosecuting Attorneys, *for appellant.*

Cullen Sweeney, Cuyahoga County Public Defender, and
Britta M. Barthol, Assistant Public Defender, *for appellee.*

ANITA LASTER MAYS, J.:

{¶1} Plaintiff-appellant, the State of Ohio ("the State") appeals the trial
court's decision determining that probable cause did not exist to believe that
defendant-appellee D.W. committed the charged crimes. The State argues that the

trial court erred in determining that no probable cause exists and asks that we remand to the juvenile court for an amenability hearing. We affirm the trial court's ruling.

{¶2} The State filed an eight-count complaint against D.W. charging him with the following offenses: two counts of improperly discharging into habitation; two counts of felonious assault; discharge of firearm on or near prohibited premises; having weapons while under disability; improperly handling firearms in a motor vehicle; and obstructing official business. Counts 1 through 5 contained a one- and three-year firearm specification along with a five-year drive by shooting specification.

I.    Facts and Procedural History

{¶3} On December 28, 2019, a 911 caller reported hearing gun shots in Maple Heights. The caller reported that a silver vehicle, possibly a Chevy Cavalier, with headlights out, was in the area. Detective Matthew Heitzer ("Det. Heitzer"), with the Maple Heights Police Department ("MHPD") was patrolling the area with another police officer when he heard gunshots.

{¶4} Det. Heitzer arrived on the scene of where the 911 caller heard the gunshots and found six shell casings, including three shell casings from three different firearms. The shell casings were placed in an evidence bag and logged at the MHPD. Det. Heitzer canvassed the area and located a home that had several bullet holes. The residents of the home indicated that bullets entered the bedroom

of their home. Det. Heitzer spoke to the 911 caller and a witness, who were both at the scene.

{¶5} The witness told Det. Heitzer that the silver vehicle pulled up to the intersection of Watson Road and Prayner Avenue and fired shots. The witness described the vehicle as a silver car with a headlight out. The witness was unable to identify the person shooting from the vehicle.

{¶6} Within one minute, Officer Zupancic, of the MHPD, was driving in the area and observed a vehicle matching the description given by the witness. Officer Zupancic followed the vehicle into a driveway and activated his overhead lights. Two men exited the vehicles and ran. Four women were also in the vehicle, and Officer Zupancic ordered them to remain in the car while he pursued the two men who ran from the vehicle. Another officer on scene asked the women if they were involved in the shooting, to which they replied "no." They were allowed to leave the scene. Officers searched the vehicle and located a shell casing in the back seat of the vehicle behind the driver's seat.

{¶7} After a foot chase, officers arrested D.W., who admitted being in the passenger seat of the vehicle, but denied being the shooter, and stated that Samo was the shooter. As the vehicle was being impounded, Jayshawn Boyd ("Boyd") walked up to the police and told them that the vehicle belonged to him. Boyd stated that he lent the car to Samo, D.W., and some girls. A Cleveland police officer

identified Samo as D.B., a person he knew. Samo was not arrested or pursued. D.W. was arrested and taken into police custody.

{¶8} After D.W. was arrested, he was swabbed for gunshot residue, which determined that his hands were positive for gunshot residue ("GSR"). Boyd's hands were tested as well, and the test was negative. Forensic examination of the firing impressions left on the shell casings showed that two firearms were used. The shell casings were on both sides of the vehicle, which suggested to police officers that there were two shooters in the vehicle.

{¶9} On December 20, 2019, the State filed an eight-count complaint against D.W., who was 17 years old at the time. On March 4, 2020, the State filed a discretionary motion for an order to relinquish jurisdiction for the purpose of criminal prosecution pursuant to R.C. 2152.10(B) and for a preliminary hearing. The State asked the juvenile court to transfer D.W. to the general division of the court of common pleas, or adult court. The juvenile court held a probable cause hearing on April 18, 2023, and issued its ruling, stating that upon the conclusion of the evidence and testimony presented, the court did not find probable cause to believe the child committed the eight counts alleged in the complaint. Thus, the motion for an order to relinquish jurisdiction was denied. The trial court did not put its findings on the record.

{¶10} The State filed an appeal and on October 26, 2023, this court remanded to the trial court to place those findings on the record so that a

meaningful review could be conducted. *In re D.W.,* 2023-Ohio-3887, ¶ 1 (8th Dist.). In *D.W.,* we stated: "While 'our review of the juvenile court's probable-cause determination involves questions of both law and fact, we defer to the trial court's determinations regarding witness credibility.'" *Id.* at ¶ 21, quoting *In re B.A.T.,* 2023-Ohio-3366, ¶ 18 (8th Dist.), quoting *In re A.J.S.* 2008-Ohio-5307, ¶ 51. "In our instant case, the juvenile court did not state its determinations or findings regarding witness credibility on the record, making it impossible for us to review the juvenile court's reasoning." *Id.*

{¶11} On remand, the trial court issued the following journal entry, stating:

This matter came on for consideration this 16th day of January 2024 before the juvenile court judge upon the complaint of the affiant as to the youth adjudged to be delinquent.

Pursuant to the order of the Court of Appeals issued on October 26th, 2023:

On a prior date, this Court found there was no probable cause in this matter.

The Court found there was a lack of any credible evidence to meet the probable cause burden that there was more than a suspicion of guilt in this matter for the felony offenses charged. There was a complete lack of investigation in this matter regarding any of the other occupants in the vehicle resulting in a lack of credible evidence. The evidence presented indicates that on December 28th, 2019, there were 6-7 alleged occupants (2 male and 4-5 female) in the vehicle that evening and two alleged shooters.

There is nothing to establish that D.W. was anything more than an occupant in the vehicle. The testimony of the ballistics expert stated that in a car with multiple occupants "it's safe to say that they would all be exposed," meaning likely they would all test positive for gunshot

residue if tested. However, when the police approached the vehicle, the female occupants of the car were prevented from running and ordered to stay in the car and then shortly after just allowed to just leave the scene despite having just been involved in a shooting. The female occupants were released without a GSR test, they didn't have to provide their names, or give statements, and were not subject to further investigation as even witnesses in this matter it appears solely due to the fact they were female and not male occupants of the vehicle. Secondly, though the potential second male occupant of the vehicle was identified and known to the Maple Heights Police Department there was no effort to locate or question him. The State of Ohio and the Maple Heights Police Department failed to make any effort or priority to investigate, identify, or arrest the many other occupants of this vehicle but now want to subject the only youth initially arrested to not only juvenile charges but bindover and potential adult penalties.

Therefore, this Court finds there the State of Ohio failed to establish by credible evidence that the youth was anything more than an occupant in the vehicle on December 28th, 2019, and finds that there is not probable cause in this matter as to the felony offenses subject to transfer. It is so Ordered.

Journal Entry No. 0917530490 (Jan. 16, 2024).

**{¶12}** The State filed this appeal assigning one error for our review:

The trial court erred in determining that probable cause did not exist to believe that D.W. committed the crimes charged where he admitted to being in a car from which bullets were fired, his hands tested positive for gunshot residue, and he fled from police after the shooting.

## II. Probable Cause

### A. Standard of Review

**{¶13}** "Juvenile courts have wide discretion to transfer their cases to adult courts." *State v. Hennings*, 2019-Ohio-4675, ¶ 12 (8th Dist.), citing *State v. Poole*, 2012-Ohio-5739, ¶ 6 (8th Dist.).

{¶14} "Generally, an appeal challenging a probable-cause finding in a bindover proceeding 'involves questions of both fact and law.'" *In re R.Z.,* 2022-Ohio-3630, ¶ 25 (1st Dist.), quoting *In re A.J.S.,* 2008-Ohio-5307, ¶ 51. "But the existence of probable cause is a question of law that we review de novo." *Id. See also, In re C.G.,* 2012-Ohio-5286, ¶ 31 (8th Dist.) ("Our review of the juvenile division's decision is mixed: we defer to the court's credibility determinations by reviewing for an abuse of discretion, but we conduct a de novo review of the legal conclusion whether there was probable cause to believe that the juvenile committed the charged act.").

**B. Law and Analysis**

{¶15} In the State's sole assignment of error, it argues that the juvenile court erred in determining that probable cause did not exist to believe that D.W. committed the acts contained in the indictment. The State filed a discretionary motion for an order to relinquish jurisdiction for the purpose of criminal prosecution pursuant to R.C.2152.10(B) and for a preliminary hearing.

{¶16} "'Juvenile courts possess exclusive jurisdiction over children alleged to be delinquent for committing acts that would constitute a crime if committed by an adult.'" *State v. Jones,* 2022-Ohio-1169, ¶ 19 (8th Dist.), quoting *In re M.P.,* 2010-Ohio-599, ¶ 11; R.C. 2151.23(A).

{¶17} Pursuant to R.C. 2152.12, under specified circumstances a juvenile may be subject to a mandatory or discretionary transfer, also referred to as

bindover, from the juvenile court setting to adult court for criminal prosecution. Whether an alleged offender is subject to mandatory or discretionary transfer depends on such factors as the nature of the offense, the age of the child, and the child's prior criminal history. R.C. 2152.12(A) and (B); *Steele v. Harris*, 2020-Ohio-5480, ¶ 10.

{¶18} "'Discretionary transfer, as its name implies, allows judges the discretion to transfer or bind over to adult court certain juveniles who do not appear to be amenable to care or rehabilitation within the juvenile system or appear to be a threat to public safety.'" *Jones* at ¶ 21, quoting *State v. Hanning*, 89 Ohio St.3d 86, 90 (2000); R.C. 2152.12(B). "When considering discretionary transfer of a case, the juvenile court first determines the age of the child and the existence of probable cause to believe that the juvenile committed the acts charged." *Id.*; R.C. 2152.10(B) and 2152.12(B). "Upon establishing the juvenile meets the requisite findings, the juvenile court conducts an amenability hearing." *Id.* at ¶ 21.

{¶19} Where a complaint is filed alleging that a child is delinquent for committing an act that would be a felony if committed by an adult, the juvenile court may transfer the case to the general division if the juvenile court finds (1) the child was 14 years of age or older at the time of the act charged; (2) there is probable cause to believe that the child committed the act charged; and (3) the child is not amenable to care or rehabilitation within the juvenile system and the safety of the

community may require that the child be subject to adult sanctions. R.C. 2152.10(B); 2152.12(B).

**{¶20}** In considering the propriety of the discretionary bindover of D.W. under R.C. 2152.12(B), the juvenile court had to determine whether the State's evidence credibly supported each element of the offense to find that probable cause exists that the juvenile committed the offense. *In re C.G.,* 2012-Ohio-5286, ¶ 31 (8th Dist.), citing *State v. Iacona,* 93 Ohio St.3d 83, 93 (2001). "Probable cause in this context is not guilt beyond a reasonable doubt; it is evidence that raises more than a suspicion of guilt." *Id.,* citing *In re A.J.S.,* 2008-Ohio-5307, at ¶16. "This standard requires the juvenile court to 'evaluate the quality of the evidence presented by the state in support of probable cause as well as any evidence presented by the respondent that attacks probable cause.'" *In re C.G.* at ¶ 31, quoting *Iacona* at 93.

**{¶21}** We are cognizant that the probable cause standard is not as stringent as that of beyond a reasonable doubt and considers whether the State has demonstrated more than a mere suspicion of guilt when weighed upon any evidence presented by the defense. *In re A.J.S.,* at ¶ 16.

**{¶22}** While "our review of the juvenile court's probable-cause determination involves questions of both law and fact, 'we defer to the trial court's determinations regarding witness credibility.'" *In re B.A.T.,* 2023-Ohio-3366, ¶ 18 (8th Dist.), quoting *In re A.J.S.* at ¶ 51. At the hearing, D.W. testified that he was

inside of the vehicle when the bullets were fired at the home. The State argued that coupled with this testimony and the fact the D.W. ran from the police is further evidence that supports D.W.'s role as the shooter. However, another occupant also ran from the vehicle.

{¶23} The juvenile court found that the State had not demonstrated more than a mere suspicion of guilt. Specifically, the trial court stated that there was a complete lack of investigation in this matter regarding any of the other occupants in the vehicle resulting in a lack of credible evidence. There were six or seven other occupants in the vehicle that the police did not investigate and two alleged other shooters. The female occupants were released without a GSR test, they did not have to provide identification, or give statements, and they were not even subject to further investigation as witnesses in this matter, it appears, solely due to the fact that they were female and not male occupants of the vehicle. Secondly, though the potential second young male occupant of the vehicle was identified and known to the MHPD there was no effort to locate or question him. The State of Ohio and the MHPD failed to make any effort or priority to investigate, identify, or arrest the many other occupants of this vehicle. Also, the testimony of the ballistics expert stated that in a car with multiple occupants "it's safe to say that they would all be exposed," meaning likely they would all test positive for gun shot residue if tested. However, the other occupants were not tested for gun shot residue.

**{¶24}** Given the evidence and testimony presented, we determine that the trial court did not err in ruling that probable cause did not exist to believe that D.W. committed the charged crimes.

**{¶25}** Therefore, the State's sole assignment of error is overruled.

**{¶26}** Judgment affirmed.

It is ordered that appellee recover from appellant the costs herein taxed.

The court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court, Juvenile Division, to carry this judgment into execution.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

_____
ANITA LASTER MAYS, JUDGE

MARY J. BOYLE, P.J., CONCURS;
FRANK DANIEL CELEBREZZE, III, J., DISSENTS (WITH SEPARATE OPINION)


FRANK DANIEL CELEBREZZE, III, J., DISSENTING:

**{¶27}** I respectfully dissent from my colleagues in the majority. I would have found that the trial court erred in determining that the State failed to establish probable cause in this matter and reversed the decision of the juvenile court.

{¶28} At the bindover stage of the proceedings, the State was not required to prove the truth of the allegations against D.W. nor was it required to present evidence beyond a reasonable doubt. The majority acknowledges that the burden on the State was to present evidence demonstrating more than a mere suspicion of guilt. However, the majority goes beyond this standard and would essentially have required the State to present evidence *disproving* that the other occupants of the vehicle had committed the crimes charged.

{¶29} The trial court found that there was a "lack of any credible evidence," noting that "[t]he State of Ohio and the Maple Heights Police Department failed to make any effort or priority to investigate, identify, or arrest the many other occupants of this vehicle but now want to subject the only youth initially arrested to not only juvenile charges but bind over and potential adult penalties." This is not the same as a determination that the evidence presented by the State lacked credibility, where we would give deference to the trial court's determination. *See, e.g., In re D.R.*, 2021-Ohio-3350 (8th Dist.) (this court deferred to the juvenile court's determination of the credibility of the testimony of an eyewitness and the investigating detective). *But see, e.g., In re J.R.*, 2021-Ohio-2272 (8th Dist.) (noting that the juvenile court did not indicate that the State's identification evidence was not credible and finding that there was insufficient evidence presented because neither the police, eyewitnesses, nor the victim testified at the hearing).

{¶30} This matter is similar to *In re E.S.*, 2023-Ohio-4273, a case where the Supreme Court of Ohio reversed a decision by this court that had held the State to a burden beyond the probable cause standard and required the State to eliminate alternative theories.

> In the court of appeals' decision, the majority questions why the state did not "attempt to match anyone else's DNA" to the DNA on the firearm, [*In re E.S.*,] 2021-Ohio-4606, at ¶ 37, and why the bullet that was found in the driver's-side front door was not tested for DNA, *id*. at ¶ 38. And the majority takes the state to task for having failed to process the stolen car for gunshot residue "to at least firmly establish the firearm was discharged in the vehicle." *Id*. But at the probable-cause stage of the proceedings, the state was not required to eliminate any alternative theories or to "firmly establish," *id*., any fact. The court of appeals erred when it determined that the state's evidence was insufficient to establish probable cause regarding the involuntary-manslaughter charge.

*In re E.S.*, 2023-Ohio-4273, at ¶ 29.

{¶31} In the instant matter, the juvenile court did not question the credibility of the testifying witnesses; rather, the court focused on the lack of investigation of the other occupants in the vehicle — particularly, the female ones. The majority follows suit and concentrates solely on the possibility that one of the other occupants of the vehicle could have committed the crimes with which D.W. was charged.

{¶32} As noted above, the State is not required to disprove alternate theories of a case at a bindover proceeding. *In re A.J.S.*, 2008-Ohio-5307, ¶ 61, citing *State v. Iacona*, 93 Ohio St.3d 83, 96 (2001). The State's burden is solely to produce evidence that raises more than a mere suspicion of guilt. *Id*. at ¶ 42. Moreover, "'the

resolution of the conflicting theories of the evidence, both of which were credible, is a matter for a trier of fact at a trial on the merits of the case, not a matter for exercise of judicial discretion at a bindover hearing in the juvenile court.'" *In re E.S.*, 2021-Ohio-4606, ¶ 52 (8th Dist.) (S. Gallagher, P.J., dissenting), quoting *A.J.S.* at ¶ 64, citing *Iacona* at 96.

{¶33} It is error to require the State to produce evidence beyond that which raises more than a mere suspicion of guilt. *In re E.S.*, 2023-Ohio-4273, at ¶ 1. By upholding the trial court's decision, which appeared to be based solely upon its perceived "lack of investigation" in this matter, the majority is disregarding precedent. While questions remain as to whether D.W. could be found guilty of the crimes charged, it appears from the record that there was probable cause, i.e., more than a mere suspicion of guilt, to believe that D.W. was one of the two shooters and committed the offenses with which he was charged. The remaining questions should be left to the trier of fact.

{¶34} Because the State met its burden at the bindover hearing, I would have reversed the judgment of the juvenile court.